Durrell Lee TANNER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–93–00533–CR, 01–93–00534–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 17, 1994.

Rehearing Denied April 7, 1994.

Discretionary Review Refused
June 29, 1994.

Buddy Stevens, Angleton, for appellant.

Jim Mapel, Mary Peter Cudd, Angleton, for appellee.

Before O'CONNOR, HEDGES and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

In two cases consolidated for one trial, the trial court found appellant, Durrell Lee Tanner, guilty in both cases of driving while his license was suspended. The court assessed his punishment at a $100 fine and 120 days in jail. In his sole point of error, appellant contends that the trial court erred by admitting a certified copy of a Texas Department of Public Safety (DPS) document under TEX. R.CRIM.EVID. 803(8). We affirm.

The State called Laura Hromadka, a driver's license examiner for the DPS, to testify about appellant's driving record and license suspension. Through Ms. Hromadka, the State attempted to have a certified copy of appellant's driving record and the DPS order of appellant's license suspension admitted into evidence. Over defense counsel's objection, the trial court admitted the records under TEX.R.CRIM.EVID. 803(8), which provides an exception to the hearsay rule:

(8) **Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, matters observed by police officers and other law enforcement personnel,* or (C) against the state, factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information

or other circumstances indicate lack of trustworthiness.

(Emphasis added.)

Appellant argues that the decision in *Cole v. State,* 839 S.W.2d 798 (Tex.Crim.App. 1990), renders the evidence inadmissible under rule 803(8)(B). He contends that *Cole* disallows driving records prepared by law enforcement personnel to be admitted because they fall under the exclusion of rule 803(8)(B).

In *Cole,* the defendant was convicted of aggravated sexual assault. *Id.* at 799. In considering the admissibility of certain chemist's reports, the court held that "the absent chemist's reports constituted matters observed by law enforcement personnel and were therefore inadmissible as an exception to the hearsay rule via TRCE 803(8)(B)." *Id.* at 806. In its opinion on the State's motion for rehearing, the court clarified the holding. The reports contained "the results of tests run to determine the presence of blood, seminal fluid, spermatozoa, and foreign hair and to determine blood type." *Id.* at 808 n. 8. The court determined that some of the analyses were "remarkably subjective in nature as well as remarkably imprecise and subject to individual interpretation." *Id.* at 808. Moreover, the court considered it significant that the "reports were not prepared for purposes independent of specific litigation, nor were they ministerial, objective observations of an unambiguous factual nature." *Id.* at 805, 810.

In contrast with *Cole's* chemist's report, the driver's record and order of license suspension admitted in the case before us contain no test results of scientific analyses subject to individual interpretation; further, at least in the case of the order of driver's license suspension, the records were not prepared for purposes of litigation. Ms. Hromadka testified, as the custodian of the business records of the DPS, that she had independently investigated appellant's driving record. The reports contain: (1) the issuance and expiration dates of appellant's license; (2) a listing of at least nine convictions for moving violations committed by appellant; (3) the suspension date; and (4) a letter from the DPS to appellant dated Feb-

**10**

ruary 25, 1992, informing him of his suspension. We find that appellant's driving record and order of suspension are documents recording routine, objective observations, made as part of the everyday function of the DPS. The factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present. *See id.* at 804.

We overrule appellant's sole point of error and affirm the trial court's judgment.