

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00119-CR

CARLTON MERLE DANIEL JONES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 30,042

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Carlton Merle Daniel Jones was tried by the court, non-jury bench, for the continuous sexual assault[1] of twelve-year-old Jane Doe, found guilty, and sentenced to life in prison. On appeal, Jones alleges that there was insufficient evidence to support his conviction and that the trial court erred in submitting DNA evidence, which proved that Doe gave birth to his child. We find that the evidence was legally sufficient to support Jones' conviction and that Jones failed to preserve and waived his complaints regarding the admission of the DNA evidence. Accordingly, we affirm the trial court's judgment.

## I. Legally Sufficient Evidence Supports Jones' Conviction

Jones complains that the evidence was legally insufficient to convict him of continuous sexual assault. We disagree.

### A. Standard of Review

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[1]*See* Tex. Penal Code Ann. § 21.02(b) (West Supp. 2015).

2

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Williams v. State*, 305 S.W.3d 886, 889 (Tex. App.—Texarkana 2010, no pet.). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Based on the indictment and the statute, the State had to prove that, over a span of thirty or more days, Jones committed two or more acts of sexual abuse against Doe. *See* TEX. PENAL CODE ANN. § 21.02(b). The indictment alleged the following acts of sexual abuse: (1) that Jones intentionally or knowingly engaged in sexual contact with Doe by touching her genitals, with intent to arouse or gratify his sexual desire; (2) that Jones intentionally or knowingly engaged in sexual contact with Doe by causing her to touch his genitals, with intent to arouse or gratify his sexual desire; (3) that Jones intentionally or knowingly caused penetration of Doe's sexual organ by any means; and (4) that Jones intentionally or knowingly caused his penis to contact and/or penetrate Doe's sexual organ. The indictment alleged Jones committed these acts over a period of thirty or more days at a time when Jones was seventeen years of age or older and Doe was younger than fourteen years of age. Although the State's indictment alleged a combined four acts of sexual abuse of Doe by Jones, the State was not required to prove all of the acts of sexual abuse charged in the indictment. Rather, it was required to show, at a minimum, only that Jones committed two

3

of the alleged acts of sexual abuse against Doe during a period of at least thirty days. *See* TEX. PENAL CODE ANN. § 21.02(b)(1).[2]

**B.    The Evidence at Trial**

Philip Spencer, a detective with the City of Greenville Police Department, testified that he began investigating Jones after receiving a tip that an eight-month-pregnant, runaway child was visiting him in jail because he was the father of her baby. Spencer testified that he reviewed Jones' jailhouse telephone calls with Doe, which demonstrated that the two were involved in a relationship and were hiding the nature of their relationship until Doe turned sixteen.[3]

Spencer interviewed Jones. According to Spencer, Jones stated that Doe might have taken advantage of him while he was in an intoxicated state. Jones also admitted that there was a slight chance that the baby was his.

The evidence at trial demonstrated that Jones' mother, Daphne Jones, and Doe's grandmother, Alice Doe, were aware of Jones' relationship with Doe. Daphne testified that Jones lived with her and that Doe visited her home "probably every day" between August 2012, and the summer of 2014. Alice told Daphne that Doe was sexually active. Sometime between January and April 2013, after noting that her sexually active son was getting close to Doe, Daphne suspected that Jones was having some sort of inappropriate relationship with her. She caught Doe sneaking out of Jones' bedroom.

---

[2]The indictment also alleged lesser-included offenses of sexual assault of a child and sexual contact with a child.

[3]Spencer testified that these conversations caused him to set up an interview for Doe with the Child Advocacy Center.

4

Daphne, who admitted to using pain pills, testified that Alice abused pain medication provided to her by Jones. Daphne believed that Alice was trafficking Doe in exchange for pain medication and that her son was having sex with Doe on a regular basis. Daphne purchased condoms for Doe three or four weeks before she became pregnant. According to Daphne, after Alice discovered that Doe was pregnant, she threatened to report Jones to the police unless he continued to provide her with pain pills. Following Jones' arrest, Daphne told Spencer that, at one point, Jones and Doe were having sex once a week.

Alice testified that she believed she had caught Jones and Doe engaging in sexual activity in an automobile in June 2013. Alice, who had been arrested for failing to report the incident, stated that Jones was lying down in the backseat of the car while Doe, naked from the waist down, was on top of him, "riding him." Alice claimed that she pulled Doe from the car and took her home. She testified, "I don't know if they were actually having sex or they were done, but I mean there was something going on." Alice discovered that Doe was approximately three weeks pregnant in August 2013.

Alice admitted that she was a drug user. Jones' half-brother, Raymond Dean Jones, Jr., testified that Alice told him that she was bringing Doe to the house so Jones could have sex with her in exchange for pain pills. According to Raymond, Jones admitted to having sex with Doe several times. Raymond recalled telling Spencer that Jones and Doe were trying to have a baby. He also informed Spencer that Jones and Doe had sex three or four times on the night before Jones' arrest.

5

Doe testified that she began her sexual relationship with Jones in November 2012, when she was twelve years old. She smoked marihuana and synthetic marihuana with Jones. Doe stated that she loved Jones, had decided to have his baby, and had sexual intercourse with Jones twenty or thirty times between November 2012 and August 2013.

Doe also stated that she had sex with Raymond twice while Jones was in jail. Spencer testified that he conducted cheek swabs and obtained DNA samples from Raymond, Jones, Doe, and the baby. After collecting the samples, Spencer testified that he personally delivered them for testing to the Institute of Applied Genetics, Department of Forensic and Investigative Genetics, University of North Texas Health Science Center. Without objection, Spencer testified that he received the forensic report and that, based on the laboratory report, he believed Jones was his suspect.

**C.      Analysis**

The testimony of a child victim alone is sufficient to support a conviction for continuous sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2015); *see Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Here, Doe stated that she "had sex" with Jones many times. Jones argues that this testimony was insufficient to establish continuous sexual assault because the child did not specifically describe the sex acts which occurred. However, the following exchange between the trial court and Doe demonstrated Doe's definition of "having sex":

> THE COURT: . . . You've been asked about sex both with the Defendant and with other people. And I need you to describe for me what you believe sex to

6

be so that I know what you're talking about when you said yes we had sex or we had sex a certain number of times. What do you mean by sex?

[Doe]: Like intercourse. Like, I don't know another way to explain it.

The State was required to prove that Jones committed two or more of the acts alleged in the indictment during a period of at least thirty days. Doe's testimony demonstrated that she had sexual intercourse with Jones on at least twenty occasions.[4] Daphne, Alice, and Raymond's testimony showed that Jones and Doe had an inappropriate sexual relationship over the course of several months. We conclude that the evidence was legally sufficient to support Jones' conviction for continuous sexual assault of a child. Accordingly, we deny Jones' first point of error.

## II. Jones Did Not Preserve his Complaints about the Admission of the Laboratory Report

In his last point of error on appeal, Jones argues that the trial court erred in admitting the DNA laboratory report which demonstrated that Doe had his baby. We find that Jones failed to preserve this point of error for our review.

### A. The Objection at Trial

Amy Smuts, a forensic analyst at the University of North Texas Health Science Center, Center for Human Identification, testified that the DNA samples collected by Spencer were received by Senior Evidence Custodian Jennifer Urbina. Smuts testified that she did the DNA analysis and prepared the laboratory report. While on voir dire, Smut stated that Darice

---

[4]"[P]enetration cannot physically occur in the absence of contact." *Maldonado v. State*, 461 S.W.3d 144, 149 (Tex. Crim. App. 2015).

Yoshishige, another technologist, did the "bench work," including the extraction, quantitation, and amplification, but that she provided the data analysis and comparison and generated the report.

Jones lodged the following objection, which the trial court overruled: "[B]ecause we don't have a proper predicate established as to the collection of these samples, we're going to object to the introduction of the report or any testimony concerned in the analysis."[5] The trial court initially understood that Jones was objecting to the chain of custody of the DNA samples and questioned whether Jones' objection was to the admissibility of the evidence as opposed to the weight of the evidence. Jones clarified his objection in the following manner:

> [T]he detective did not testify I did this many swabs on [Jones], I did this many swabs on Raymond, I did this many swabs on [Doe]. He never actually even gave me any testimony that I think, maybe he did [Doe]. I know he talked to her about giving her the results, but I don't ever remember any testimony at all about he's the one that took the swabs from her or from the child. So there is no evidence to even establish a predicate to get to that point.[6]

---

[5]On appeal, Jones does not raise a point of error arguing that Smuts' testimony should have been excluded.

[6]Jones was incorrect in his argument, as demonstrated by the following portion of the transcript:

> Q.    And how do you get DNA? For the record, how did you get the DNA?
> A.    It was through cheek swab method.
> Q.    Okay. Just please briefly explain to the Court what a cheek swab method is. What do you do?
> A.    Basically, it's a -- a sterile Q-tip is used with a rubbing motion on the inside of the cheek which collects the cells onto the swab. And then it's placed into a sterile container until it can be forensically examined.
> Q.    Okay. And how many cheek swabs do you do on each individual?
> A.    You do a total of four swabs on each individual two on each cheek.
> Q.    And you do that for each, [Doe], [Doe's baby], and Carlton Jones; is that correct?
> A.    Yes, sir. . . .
> Q.    Okay. Did you ever collect DNA from Raymond Jones?
> A.    Yes, sir, I did.
> Q.    Okay. And you mentioned earlier you didn't have a search warrant. How did you get it from Raymond Jones?
> A.    He voluntarily consented to give his DNA.

8

Jones added, "This is not about a chain. This is first about a predicate as to the admission of the particular -- the evidence and the results therefrom."

## B. The Confrontation Clause Complaint Was Not Preserved

Jones' brief first argues that the admission of the laboratory report violated the Confrontation Clause.[7] "As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). "[T]he purpose of requiring [an] objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (quoting *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000)).

Jones did not raise his Confrontation Clause complaint with the trial court. Instead, Jones' objection below was that the State failed to lay the proper predicate to establish that the report was admissible. An objection under the Texas Rules of Evidence does not preserve a complaint under the Confrontation Clause. *See id.*; *Dollins v. State*, 460 S.W.3d 696, 698 (Tex. App.—Texarkana 2015, no pet.).

## C. Jones Waived his Remaining Complaint to the Admission of the DNA Report

Next, Jones argues that the trial court erred in admitting the DNA report because "the saliva sample which provided the basis for State's Exhibit 6 was not properly authenticated as required

---

[7]*See* U.S. CONST. amend. VI.

9

by Texas Rule of Evidence 901(a)."[8]  The State argues that Jones has waived this complaint.  We agree.

"To preserve error, it has been consistently held that one must object each and every time [allegedly] inadmissible evidence is offered," in the absence of a running objection.  *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)).  "Where a party fails to make a timely objection each time particular testimony is offered, no reversible error is presented." *Juarez v. State*, 461 S.W.3d 283, 294 (Tex. App.—Texarkana 2015, no pet.) (quoting *Martin v. State*, 151 S.W.3d 236, 240 (Tex. App.—Texarkana 2004, pet. ref'd)).

Without objection, Spencer testified that the laboratory report demonstrated that Jones was his suspect, indicating that the report proved that Jones was the father of Doe's baby.  The jailhouse telephone calls also contained similar evidence, including Jones' hope for a baby girl, his confidence that he would be a great dad, his desire to claim the baby on his income tax return, and his wish to marry Doe so that the baby could have his last name.  Also, Jones never obtained a running objection with respect to Smuts' testimony. Thus, without objection, Smuts testified about the results of the DNA laboratory report.  Therefore, we find that Jones waived his remaining complaints regarding the admission of the DNA report.  *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Tapps v.*

---

[8]The authentication requirement for admissibility is met once the State has shown the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory. *Gallegos v. State*, 776 S.W.2d 312, 315–16 (Tex. App.—Houston [1st Dist.] 1989, no pet.).  Any gaps and minor theoretical breaches go to the weight rather than the admissibility of the evidence, absent a showing of tampering. *Medellin v. State*, 617 S.W.2d 229, 232 (Tex. Crim. App. 1981); *Gallegos*, 776 S.W.2d at 315–16.

*State*, 257 S.W.3d 438, 447 (Tex. App.—Austin 2008), *aff'd*, 294 S.W.3d 175 (Tex. Crim. App. 2009).  We overrule his last point of error.

## IV.    Conclusion

We affirm the trial court's judgment.


                                    Ralph K. Burgess
                                    Justice


Date Submitted:        March 10, 2016
Date Decided:          June 9, 2016

Do Not Publish

11