COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



ALBERT RAMIREZ, §

                  Appellant, §

v. §

THE STATE OF TEXAS, §

                  Appellee. §

§

No. 08-11-00298-CR

Appeal from the

171st District Court

of El Paso County, Texas

(TC#20090D03210)

## **O P I N I O N**

Appellant Albert Ramirez was convicted of three counts of aggravated sexual assault of a child under 14 and sentenced to 99 years' confinement on each count.  On appeal, Appellant contends the trial court abused its discretion (1) in limiting his cross-examination of two witnesses, (2) in allowing testimony and evidence concerning the victim's outcry, and (3) in allowing the State to ask certain questions in voir dire and make certain arguments in punishment.  Appellant also contends the aggravated sexual assault statute is unconstitutional on its face because it does not require a culpable mental state concerning the victim's age.  We affirm.

### BACKGROUND

Appellant was the victim's stepfather.  Appellant lived with the victim's mother, the victim, and her three sisters from January 2006 until November 2008.  Appellant continuously

sexually abused and assaulted the victim during that time – from the time the victim was six years old until she was nine. This abuse included vaginal intercourse, anal intercourse, oral intercourse on the victim and on Appellant, sucking of the victim's breasts, and making the victim penetrate her own vagina. The victim never told anyone about the abuse until, beginning on Thanksgiving Day, November 27, 2008, and continuing until November 30, she informed her mother and wrote a series of notes describing the abuse. The victim also provided a note describing the abuse to a Sexual Assault Nurse Examiner, which was recorded as part of the written history in the victim's medical records. The Sexual Assault Nurse Examiner did not find any physical injuries to the victim. The nurse testified that the lack of physical injury was consistent with the fact that a long time had passed since the last sexual assault and any injuries would have healed quickly.

## DISCUSSION

### Limits on Cross-examination

In his first two issues, Appellant complains that the trial court abused its discretion in limiting his cross-examination of two witnesses – Grandma Lola[1] and the victim's mother. Appellant asserts that by limiting his cross-examination, the trial court violated the Confrontation Clause's guarantee of an opportunity for effective cross-examination.

### *Standard of Review*

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010); *Whipple v. State*, 281 S.W.3d 482, 499 (Tex.App. – El Paso 2008, pet. ref'd). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736; *Whipple*, 281 S.W.3d at 499-500. Trial courts retain wide latitude to impose

---

[1] Grandma Lola was Appellant's mother.

2

reasonable limits on cross-examination, so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of an opportunity for effective cross-examination. *Johnson v. State*, 433 S.W.3d 546, 551-52 (Tex.Crim.App. 2014).

*Analysis*

Limits on Cross-Examination of Grandma Lola

In Issue One, Appellant complains about the trial court's refusal to allow his counsel to cross-examine Grandma Lola on three subjects – whether the victim was listed on the lease of an apartment on Betel Street that Grandma Lola had secured for the family, whether the victim ever made an outcry of sexual abuse to Grandma Lola, and whether the victim ever complained to Grandma Lola about problems going to the bathroom. Appellant contends that the excluded evidence went to the heart of the defensive issue that he did not have the kind of access to the victim as alleged by the State, and that the excluded evidence was necessary to counter the evidence of outcry made to the victim's mother. He contends this evidence was relevant because it contradicted the State's version of events, and alternatively was admissible under the rule of optional completeness.

*The Betel Street Lease* – During defense counsel's direct examination of Grandma Lola concerning her knowledge where the family lived over the years, counsel inquired about a lease on an apartment on Betel Street:

Q. Okay. There was mention of an apartment on Betel Street. Do you know anything about that?

A. That apartment, I got it for them. When they move[d] from John Coping, to that I was the one that rented out the apartment.

Q. Can you tell the jury about the lease that you signed for that apartment?

3

[Prosecutor]: I have to object, Your Honor, relevance.

The Court: What is the relevance?

[Defense Counsel]: Well, Your Honor, the child said she lived at that apartment and the person who rented out the apartment, I like to get into that because the little girl was not on the lease and this lady knows when that girl was there or not.

[Prosecutor]: How is that relevant, Your Honor?

The Court: Sustained.

While Appellant contends the trial court abused its discretion in excluding this area of inquiry from the cross-examination – ostensibly because it would show his lack of access to victim[2] – counsel did not make an informal or formal bill to show how Grandma Lola would have testified on this subject. She could have testified there was no written lease, or that the lease did not require children living on the premises to be listed, or that the victim was indeed listed on the lease. Because we don't know how Grandma Lola would have testified on the issue, we cannot evaluate whether her testimony would have been relevant, or if it was, how Appellant was harmed by its exclusion.

A party may claim error in the exclusion of evidence only if the "party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." TEX.R.EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex.Crim.App. 2009) ("In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an 'offer of proof' which sets forth the substance of the proffered evidence."). While "[t]he offer of proof may consist of a concise statement by

---

[2] The State correctly points out that the outcry notes do not state, and the victim never testified, that she was sexually abused or assaulted at the Betel Street apartment. Thus, even if we assume the victim was not on the Betel Street lease, that fact would have little, if any, relevance concerning Appellant's access to the victim, nor would that fact tend to impeach the victim since she never claimed to have been assaulted at the Betel Street apartment.

4

counsel … the proffer 'must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible.'" *Id*. at 889-90 (quoting *Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App. 1998)).

As this Court has instructed in the past, when appellant's "complaint is that he did not have an opportunity to fully cross-examine the witness, he must show what questions he would have asked and what the answers would have been." *Ford v. State*, No. 08-11-00307-CR, 2014 WL 823409, at *5 (Tex.App. – El Paso Feb. 28, 2014, no pet.) (not designated for publication). The best approach is "to completely cross-examine the witness outside of the jury's presence. The trial court would then have had the opportunity to rule on the admissibility of the evidence in light of the actual evidence and the appellate court could evaluate whether it was error to exclude the evidence and whether it was harmful." *Id*.

Appellant did not make any offer of proof as to the substance of Grandma Lola's expected testimony, and the context reveals only that counsel was going to examine her concerning the Betel Street lease. Accordingly, Appellant has failed to preserve error.

*Outcry to Grandma Lola* – Likewise, Appellant has waived error concerning Grandma Lola's excluded testimony whether victim had ever made an outcry to her. Counsel asked Grandma Lola whether the victim had ever told her "anything had happened between her and [Appellant]." The trial court sustained the State's hearsay objection. However, again, Appellant did not make an offer of proof as to the substance of Grandma Lola's expected testimony, and the context reveals nothing about how she might have testified. Accordingly, Appellant has failed to preserve error.

*Problems in the bathroom* – As to Appellant's final complaint concerning the excluded testimony whether the victim ever told Grandma Lola if she had any problems going to the bathroom, the record shows that Grandma Lola answered the question, "No," before the State made its objection:

Q. Did you ever see anything strange in the laundry from [the victim] when she lived in your home:

A. No.

Q. No bloody underwear?

A. No.

Q. Okay. When [the victim] lived in your home, did she every [sic] complain to you of any pain in the anus?

A. No.

Q. Did she ever tell you she had any problems going to the bathroom?

[Prosecutor]: I have –

A. No.

[Prosecutor]: I have to object, Your Honor, all hearsay, about whatever [the victim] told her, complete hearsay.

After its untimely objection, the State did not move the trial court to strike Grandma Lola's answer or for the jury to disregard that answer. Therefore, the evidence Appellant claims was excluded was before the jury and remained before the jury for their consideration. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991) (only a motion to strike removes evidence "from the body of evidence the jury is allowed to consider"); *Heidelberg v. State*, 36 S.W.3d 668, 672-73, 674 (Tex.App. – Houston [14th Dist.] 2001, no pet.) (same). We conclude that under

6

these circumstances, Appellant cannot show he was harmed by the trial court's ruling. Issue One is overruled.

Limits on Cross-Examination of the Victim's Mother

In Issue Two, Appellant contends the trial court abused its discretion in preventing the cross-examination of the victim's mother concerning her possible bias in favor of the State because Child Protective Services had once removed the victim from her protection and could possibly do it again. We conclude there was no abuse of discretion.

During defense counsel's cross-examination of victim's mother, the trial court refused to allow defense counsel to question her concerning an incident in 2005 when Child Protective Services removed the victim and her other children from her home. Counsel subsequently made a bill of the proposed testimony. The victim's mother testified during the bill that CPS took her children away in 2005, after she was already living with Appellant, because both she and Appellant were using drugs and the home was unsanitary. The children were placed with Appellant's mother, Grandma Lola. The victim's mother stated she would not want to go through that again, but that she was not afraid it would happen again.

Appellant argues the trial court abused its discretion in disallowing this testimony because it would have demonstrated that the witness was biased with an incentive "to curry favor with the state." Appellant's theory is that "the state had removed the complainant from her before and, if she did not testify for the state, the complainant could be removed again." The State recognizes that exposing a witness's motivation to testify for the State is a proper and important purpose of cross-examination. *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex.Crim.App. 1998). The State also recognizes that the parties are allowed great latitude to show any fact that might tend to

7

establish ill feeling, bias, motive, or animus on the part of a witness. *Id.* The State argues, however, that the trial court did not abuse its discretion because Appellant failed to show any nexus or logical connection between the 2005 CPS action and any alleged bias or motive of victim's mother to testify in favor of the State at the time of trial. We agree with the State.

Cross-examination concerning a bias in favor of the State is proper when it is shown the witness is in a "vulnerable relationship" with the State at the time of his testimony. *See Carroll v. State*, 916 S.W.2d 494, 498-99, 501 (Tex.Crim.App. 1996) (holding impeachment of the witness to show bias toward the State should have been allowed because the witness had a pending criminal charge with the same prosecutor's office with possible punishment as a habitual criminal). But, simply showing some relationship between the witness and the State is not enough – the defendant must also establish a nexus or logical relationship between the evidence suggesting bias or motive and the witness's testimony at trial.

For instance, evidence to show bias of a State witness in state court was properly disallowed when the alleged bias concerned unrelated pending federal felony charges. *Carpenter*, 979 S.W.2d at 635. In *Carpenter*, the defendant failed to establish a nexus or logical relationship between the pending federal charges and the witness's testimony, because the federal charge was unrelated to the State's prosecution in which the witness was involved. *Id.* Further, the bare assertion that the witness may have believed his testimony in state court would somehow benefit him in his federal case was insufficient to allow impeachment on that point. *Id.*; *cf. United States v. Landerman*, 109 F.3d 1053, 1063-64 (5th Cir. 1997) (where impeachment that the witness had a pending state charge should have been allowed in federal prosecution because the witness's

plea agreement in the federal case provided that any other prosecution authority would be made aware of his cooperation in the federal case).

The necessity for a nexus or logical relationship was emphasized by the Court of Criminal Appeals in *Irby v. State*, 327 S.W.3d 138 (Tex.Crim.App. 2010). There, the defendant in a prosecution for sexual assault of a child wanted to show the victim was on deferred-adjudication probation for aggravated assault with a deadly weapon by the same prosecuting agency, thereby placing the victim in a vulnerable relationship with the State and allowing impeachment for bias. The Court disallowed the impeachment, holding "a defendant must show some causal connection or logical relationship between a witness's probationary status and his potential bias to testify favorably toward the State before the witness may be cross-examined with that status." *Id*. at 140. The Court concluded that the right to confrontation as set forth in *Davis v. Alaska*[3] does not do away with evidentiary rules, and a witness's probationary status does not automatically create a vulnerable relationship allowing impeachment with that status:

> *Davis v. Alaska* is not a blunderbuss that decimates all other evidentiary statutes, rules, and relevance requirements in matters of witness impeachment. It is a rapier that targets only a specific mode of impeachment – bias and motive – when the cross-examiner can show a logical connection between the evidence suggesting bias or motive and the witness's testimony. We therefore reject appellant's absolutist position that "[a witness] … is always in a vulnerable relationship with the State" and that mere status is always automatically relevant to show a witness's possible bias and motive to testify favorably for the State[.]

*Id*. at 152.

Likewise in the present case, the witness's mere status of having had her children removed by CPS in the past was insufficient to show that the witness had a possible bias or motive to testify favorably for the State at trial. Other than showing that CPS had removed the witness's children

---

[3] 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

from her home several years before trial, Appellant presented no evidence showing a nexus or logical connection between the CPS action in 2005 and the witness's testimony at trial. Appellant merely made the bare assertion that the victim's mother may have had some incentive to testify favorably for the state. Appellant did not present any evidence of a pending CPS action, that the prosecution could instigate some kind of CPS action, of an agreement with the prosecution in return for her testimony, of any prosecutorial coercion or threat, or that CPS was acting as a state agent.[4] The trial court thus did not abuse its discretion in in preventing Appellant's counsel from cross-examining the victim's mother concerning her possible bias in favor of the State. Issue Two is overruled.

**Evidence of Outcry**

In his third and fourth issues, Appellant complains about the trial court allowing the victim's mother to testify from the outcry notes provided to her by the victim, and in admitting into evidence the outcry note the victim provided to the Sexual Assault Nurse Examiner.

*Standard of Review*

A trial court has broad discretion in determining the admissibility evidence under the outcry statute. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex.Crim.App. 1990); *see Villalobos v. State*, No. 08-09-00014-CR, 2010 WL 4523763, at *3 (Tex.App. – El Paso Nov. 10, 2010, pet. ref'd) (not designated for publication). The exercise of that discretion will not be disturbed unless a

---

[4] We note that CPS does not necessarily act as an agent for a prosecutor's office. As the Court of Criminal Appeals has recognized, while CPS case workers have been held to be law enforcement officers or state agents in some circumstances, "an examination of the entire record is required to determine whether a CPS employee was a state agent in a given situation." *Harm v. State*, 183 S.W.3d 403, 407-08 (Tex.Crim.App. 2006) (because "the CPS reports significantly predate the allegations against appellant … CPS could not have been working with the prosecution or at its behest").

clear abuse of that discretion is established by the record. *Garcia*, 792 S.W.2d at 92; *Villalobos*, 2010 WL 4523763, at *3.

*Analysis*

Outcry to the Victim's Mother

In Issue Three, Appellant contends the trial court abused its discretion in allowing the victim's mother to testify from the "outcry" notes provided to her by the victim because the statements contained in those notes did not meet the narrow hearsay exception provided by the outcry statute. In particular, Appellant contends that the statements were inadmissible because they were spread out over four days, from November 27 to November 30, 2008. We disagree.

The admissibility of outcry statements is governed by Article 38.072 of the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 38.072 (West Supp. 2014). The statute provides that an outcry statement is admissible despite the hearsay rule if, in part, the trial court finds that the statement is reliable based on the time, content, and circumstances of the statement. *Id.* at 38.072, § 2(b)(2).

Appellant does not discuss any of the factors that went into the trial court's decision to admit the statements as reliable; he asserts only that "the time period that these hearsay statements covered caused them to be unreliable under the statute and inadmissible." The statute, however, contains no requirement that the outcry statements occur within any set time frame. And, "[i]t would be impossible for us in our judicial capacity to set a specific time period over which a child's outcry must be completed in every case." *Zinger v. State*, 899 S.W.2d 423, 430 (Tex.App. – Austin 1995), *rev'd on other grounds*, 932 S.W.2d 511 (Tex.Crim.App. 1996).

11

The courts have concluded there is no abuse of discretion in admitting outcry statements occurring over time frames much longer than the four days involved in this case. *See, e.g., Zinger v. State*, No. 03-97-00300-CR, 1998 WL 175527, at *4 (Tex.App. – Austin April 16, 1998, pet. ref'd) (op. on remand, not designated for publication) (outcry statements continuing over thirteen-day period admissible); *Moon v. State*, 856 S.W.2d 276, 281 (Tex.App. – Fort Worth 1993, pet. ref'd) (outcry statements continuing over course of several weeks admissible); *Farrow v. State*, No. 03-98-00411-CR, 1999 WL 331771, at *2 (Tex.App. – Austin May 27, 1999, pet. ref'd) (not designated for publication) (outcry statements occurring almost a month apart admissible). Outcry statements occurring over a four-day period are not per se unreliable, and Appellant has not explained what made the statements unreliable under the circumstances of this case. Appellant has thus failed to show the trial court clearly abused its discretion. Issue Three is overruled.

Outcry to the Sexual Assault Nurse Examiner

In Issue Four, Appellant contends the trial court abused its discretion in admitting the note the victim wrote to the Sexual Assault Nurse Examiner because it contained hearsay that did fall within the hearsay exception for prior inconsistent statements. But, as the State points out, the victim's entire medical record was offered into evidence, including the portions containing the handwritten notes given by the victim to the Sexual Assault Nurse Examiner, and Appellant affirmatively stated that he had no objection to their admission. The medical records were then admitted in their entirety. Consequently, any error in their admission was waived. *See Holmes v. State*, 248 S.W.3d 194, 200 (Tex.Crim.App. 2008) (appellant affirmatively waived his right to have the trial judge determine the admissibility of the crack pipe by stating "No objection" when

12

the State offered that evidence); *Carreon v. State*, No. 08-12-00196-CR, 2014 WL 4243583, at *4 (Tex.App. – El Paso Aug. 27, 2014, no pet.) (appellant's assertion during trial that he has "no objection" to the admission of evidence waives any error).

Appellant's later objection to the notes being published to the jury does not change our analysis. First, "[w]here the same evidence or argument is presented elsewhere during trial without objection, no reversible error exists." *Ryan v. State*, 937 S.W.2d 93, 102 (Tex.App. – Beaumont 1996, pet. ref'd). Second, Appellant has also waived error because his objection at trial to publishing the notes to the jury does not comport with his hearsay ground asserted on appeal. An objection stating one legal basis at trial may not be used to support a different legal theory on appeal. *Maldonado v. State*, 902 S.W.2d 708, 711 (Tex.App. – El Paso 1995, no pet.).

In any event, the jury was properly allowed to see the documents once they were admitted into evidence. *Wheatfall v. State*, 882 S.W.2d 829, 838 (Tex.Crim.App. 1994) ("Upon admission by the trial court, the jury is permitted to access the evidence in some manner … including stopping a trial to allow the jury to read the exhibit[.] …The manner and means of the presentation of documentary evidence to a jury is best left to the sound discretion of a trial court."). Further, the jury was entitled to take all properly admitted exhibits into the jury room. TEX.CODE CRIM.PROC.ANN. art. 36.25 (West 2006). We fail to see how publishing those documents during trial could have harmed Appellant. Issue Four is overruled.

### Commitment Question in Jury Selection

In Issue Five, Appellant contends the trial court abused its discretion by purportedly allowing the State to commit the jury venire to convict Appellant despite the absence of any physical evidence of penetration.

13

*Standard of Review*

The trial court's ruling on a commitment question is reviewed under the abuse of discretion standard. *Fuller v. State*, 363 S.W.3d 583, 585 (Tex.Crim.App. 2012) (citing *Sells v. State*, 121 S.W.3d 748, 755-56 (Tex.Crim.App. 2003)); *see Samaripas v. State*, 454 S.W.3d 1, 5 (Tex.Crim.App. 2014) (trial court has broad discretion over the voir dire process, including determining the propriety of a particular question); *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim.App. 2002) ("We leave to the trial court's discretion the propriety of a particular question and the trial court's discretion will not be disturbed absent an abuse of discretion."). We conclude the trial court did not abuse its discretion.

*Analysis*

As an initial matter, we must determine whether, as the State contends, Appellant waived any error occurring during voir dire because his counsel stated "No objection, Your Honor," at the conclusion of jury selection when the court asked if Appellant had any objection to the jurors being seated to decide the case. The State relies in part on *Harrison v. State*, 333 S.W.3d 810, 812 (Tex.App. – Houston [1st Dist.] 2010, pet. ref'd).

After the briefs were filed in this appeal, however, the Court of Criminal Appeals overruled *Harrison*, and held that replying "None" or "No, Your Honor," when asked whether there is an objection to "the seating of the jury," or "to the jury as selected" at the conclusion of jury selection, does not waive any previously preserved claim of error during the voir dire proceedings. *Stairhime v. State*, No. PD-1071-14, 2015 WL 3988925, at *5 (Tex.Crim.App. July 1, 2015). Accordingly, we conclude Appellant did not waive any previously preserved claims of error in voir dire by stating he had no objection to the seating of the jury.

Here, Appellant raises only one previously preserved claim of error in voir dire – his objection to the State's inquiry whether anyone in the jury venire would expect physical injuries in an aggravated sexual abuse case where the State must prove penetration. Appellant's objection arose in the following context.

During voir dire the State discussed the various "stereotypes involved in sexual abuse cases," presenting one such stereotype as, "Most children who are sexually abused suffer injuries, and I am talking about physical injuries." The State followed up by asking two potential jurors whether they could find Appellant guilty if the State proved aggravated sexual assault beyond a reasonable doubt, but there was no evidence of a physical injury to the victim.[5] The State explained that actual intercourse is not required for "legal penetration" under the aggravated sexual assault statute, but rather the only penetration required is a slight insertion past "the outer lips[.]" The State then asked the jury venire:

> So in an ag[gravated] sexual assault where the State has to prove penetration, would you expect injuries? Would you expect physical injuries, physical signs?

Appellant objected that the State was "contracting the evidence." After the trial court overruled the objection, the State followed up by asking various potential jurors if they would require the State to show physical injuries in "a slight penetration case," even if that was not something the State was required to prove.

Appellant contends the State's inquiry was "clearly a commitment question," and that "[a]s there were no injuries in this case and arguably injuries would be expected when an adult man penetrates either the vagina or anus of a child," the question was improper because "it was committing the venire to an issue that went to the crux of the defense."

---

[5] Appellant objected to this inquiry at trial as "contracting" with the jury, but he concedes in his brief on appeal that this was a proper line of inquiry.

15

The test to determine whether a question is an improper commitment question asks: (1) whether the question is actually a commitment question; (2) if so, whether the commitment question gives rise to a valid challenge for cause; and (3) if it does, whether the question adds facts beyond those necessary for a challenge for cause. *Standefer v. State,* 59 S.W.3d 177, 179-84 (Tex.Crim.App. 2001). Improper commitment questions are prohibited "to ensure that the jury will listen to the evidence with an open mind – a mind that is impartial and without bias or prejudice – and render a verdict based upon that evidence." *Sanchez v. State,* 165 S.W.3d 707, 712 (Tex.Crim.App. 2005).

First, we question whether asking if one "would expect" physical injuries in an aggravated sexual abuse case involving penetration was a commitment question. A commitment question attempts to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. *Standefer,* 59 S.W.3d at 179. Commitment questions "require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context." *Sanchez,* 165 S.W.3d at 712. The State's question did not seek to commit the prospective jurors to a verdict. The State did not ask whether the jurors could convict Appellant in the absence of physical evidence. *See Delacerda v. State,* 425 S.W.3d 367, 382 (Tex.App. – Houston [1st Dist.] 2011, pet. ref'd) (finding question asking whether jury members could convict defendant in absence of physical evidence to be commitment question). The State simply inquired whether the venire would expect physical injuries in a penetration case.

Even if the State's inquiry was a commitment question, the question gave rise to a valid challenge for cause. A veniremember may be challenged for cause if he "has a bias or prejudice

16

against any phase of the law upon which the State is entitled to rely for conviction or punishment."

TEX.CODE CRIM.PROC.ANN. art. 35.16(b)(3) (West 2006); *see Delacerda,* 425 S.W.3d at 382.

Under Texas law, the uncorroborated testimony of a child victim, standing alone, is sufficient to support a conviction for aggravated sexual assault under Section 22.021. *Tran v. State,* 221 S.W.3d 79, 88 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd); *Jensen v. State,* 66 S.W.3d 528, 533–34 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd); *see also Osborne v. State*, No. 07-13-00156-CR, 2015 WL 3463047, at *2 (Tex.App. – Amarillo May 29, 2015, no pet.) (mem. op., not designated for publication). And, there is no requirement that physical, medical, or other evidence be proffered to corroborate the victim's testimony. *Osborne*, 2015 WL 3463047, at *3; *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex.Crim.App. 1978) (concluding that victim's testimony alone is sufficient evidence of penetration in prosecution for aggravated rape, without medical, physical, or other evidence). Thus, the State is not required to present evidence of physical injury to prove aggravated sexual assault.

During voir dire, the State explained that "penetration" required only a slight insertion, not necessarily leaving physical evidence. The State's question then was designed to elicit any bias requiring physical evidence in addition to testimony to establish penetration. Thus, we find that the answer to the State's inquiry would give rise to a proper challenge for cause. *See Harris v. State,* 122 S.W.3d 871, 880 (Tex.App.–Fort Worth 2003, pet. ref'd) ("Although the State may not bind a prospective juror to a specific set of facts, the State is permitted to determine whether a prospective juror will require evidence the law does not require to convict a defendant.").

Further, the State's question did not supply facts beyond what was necessary to sustain a challenge for cause. *Standefer,* 59 S.W.3d at 182. The State's inquiry added no facts, but was

17

simply an inquiry whether one would expect physical injuries in a penetration case. We conclude the State did not add more facts than were "necessary to test whether a prospective juror is challengeable for cause." *Id*.

Ultimately, the question was not an improper commitment question because its objective was proper – to find jurors who would not follow the law and challenge them for cause. Legitimate voir dire questions seek "to elicit information which would establish a basis for a challenge for cause" and "to facilitate the intelligent use of peremptory challenges[.]" *Sanchez*, 165 S.W.3d at 710–11. The specific harm created by an improper commitment question is indoctrinating a juror on the party's theory of the case to such an extent that the jury or any specific juror is "poisoned" on a legal issue or fact important to the verdict. *Id*. at 711, 713. The ultimate issue is whether the question's objective is proper or improper, i.e., whether the question seeks information to support the exercise of a challenge for cause or peremptory challenge or merely attempts to indoctrinate the veniremembers on the party's theory of the case. *Juarez v. State*, 461 S.W.3d 283, 291-92 (Tex.App. – Texarkana 2015, no pet.).

In the present case, the State theorized that Appellant sexually assaulted the victim by penetrating her vagina and anus. The law did not require the State to show physical trauma in order to convict. The objective in asking the question was not to convince veniremembers to convict Appellant without physical evidence of penetration, but to identify those jurors who would never convict in the absence of physical evidence, so they could be challenged for cause. Obtaining a commitment from jurors that they would not acquit simply because of a lack of physical evidence, did not foreclose the jury's options to acquit Appellant for any other legitimate reason. Accordingly, we conclude the State did not seek to indoctrinate the venire to convict

Appellant on any particular evidence, but rather sought to determine if the veniremembers could follow the law by not requiring the State to prove more than was legally required. We overrule Issue Five.

## Jury Argument in Punishment

In Issue Six, Appellant contends the trial court abused its discretion in allowing the State to argue in punishment that he will always be aroused by young children and that he will do the same thing once he leaves prison. We conclude that Appellant failed to preserve error by failing to object to the first statement and by failing to pursue his sustained objection to an adverse ruling in the second.

At one point in the punishment phase, the State argued, "Most people, most adults are sexually attracted." Defense counsel objected to this statement as not being a reasonable inference from the evidence. The trial court overruled the objection. Appellant does not complain about this argument on appeal, however. Rather, Appellant complains about a later, related argument by the State:

> And he will always be sexually aroused by young children, just as adults will always be aroused by other adults.

Appellant, however, did not object to this argument.

Appellant also complains that the State later argued, "Once he comes out of prison, he is going to go do the same thing." Defense counsel did raise an objection to this second argument, but the objection was sustained and counsel failed to request an instruction to disregard or to move for mistrial after the objection was sustained.

Appellant failed to preserve any error concerning the propriety of either of the prosecutor's arguments. By failing to object in the first instance, and by failing to pursue his sustained

19

objection to an adverse ruling in the second, Appellant has waived error. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996) ("a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal"); *see Threadgill v. State*, 146 S.W.3d 654, 670 (Tex.Crim.App. 2004) (reaffirming the *Cockrell* rule); *see also Wilson v. State*, 179 S.W.3d 240, 249 (Tex.App. – Texarkana 2005, no pet.) (a defendant must object each time the impermissible argument is made, or the complaint is waived). Issue Six is overruled.

## Constitutionality of Aggravated Sexual Assault Statute

In Issue Seven, Appellant contends the aggravated sexual assault statute is unconstitutional on its face because it does not require proof of a culpable mental state concerning the victim's age. Section 22.011(a)(2) of the Texas Penal Code covers sexual assault of child under the age of 17. TEX.PENAL CODE ANN. § 22.011(a)(2), (c)(1) (West 2011). When the victim is younger than 14 years of age, however, the offense is aggravated sexual assault under Penal Code Section 22.021. *Id*. at § 22.021(a)(1)(B), (a)(2)(B) (West Supp. 2014). "Section 22.021 requires no culpability as to the age of the victim[.]" *Fleming v. State*, 455 S.W.3d 577, 582 (Tex.Crim.App. 2014), *cert. denied*, 135 S.Ct. 1159 (2015). In *Fleming*, the Court of Criminal Appeals determined that Section 22.021 is not unconstitutional – under either the Due Process Clause of the Fourteenth Amendment or the Due Course of Law provision of the Texas Constitution – for failing to require the State to prove the defendant had a culpable mental state regarding the victim's age, or for failing to contain or recognize a mistake-of-fact defense. *Id*. at 583. We are bound by the Court of Criminal Appeals' decision in *Fleming* that Section 22.021 is not unconstitutional on its face

20

even though it does not require proof of a culpable mental state concerning the victim's age.   Issue Seven is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


STEVEN L. HUGHES, Justice

August 26, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)